IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

```
_____  )
                          )
JINNY KIM,                )
                          )
          Plaintiff,      )
                          )
     v.                   )    Civ. No. 19-00579 ACK-WRP
                          )
DISNEY VACATION CLUB HAWAII)
MANAGEMENT COMPANY, LLC,   )
                          )
          Defendant.      )
_____  )
```

**ORDER GRANTING DEFENDANT DISNEY'S**
**MOTION FOR SUMMARY JUDGMENT (ECF NO. 36)**

Plaintiff Jinny Kim brought this lawsuit against her former employer Defendant Disney Vacation Club Hawaii Management Company, LLC asserting claims for discrimination, a hostile work environment, and retaliation under state law. Disney moved for summary judgment on all three claims. ECF No. 36. For the reasons detailed below, Disney's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

**I.   Factual Background**

The facts in this case are principally drawn from the parties' concise statements of facts ("CSFs") and the evidentiary exhibits attached thereto. See Def. CSF, ECF No.

37; Pl. CSF, ECF No. 55; Def. Reply CSF, ECF No. 60.  Whenever
any particular fact is in dispute, the Court will say so.

### a. Company Policies

Disney hired Plaintiff in May 2012 as a front
desk/guest service hostess.  Upon the start of her employment,
Plaintiff received a copy of Disney's employee policy manual and
understood that she was responsible for abiding by company
policies.  Pl. CSF ¶ 3 (not contesting Def. CSF ¶ 3).  Disney's
employee manual provides that noncompliance with company
policies "may be addressed by such steps as verbal counseling,
expectations memos, performance reviews, performance improvement
plans, demotion and/or termination, as deemed appropriate."  Pl.
CSF ¶ 4 (not contesting Def. CSF ¶ 4).  The manual distinguishes
"disciplinary" and "non-disciplinary" measures of dealing with
noncompliance.  Pl. CSF ¶ 5 (not contesting Def. CSF ¶ 5).  In
that regard, verbal discussion counseling (even when documented
and when in response to noncompliance with company policies) is
not considered formal discipline.  Pl. CSF ¶ 5 (not contesting
Def. CSF ¶ 5).  Discussion counseling is different from a
written reprimand, which is considered formal discipline.  Pl.
CSF ¶ 5 (not contesting Def. CSF ¶ 5).  Disney policy as stated
in the manual also provides that certain conduct, including any
act of falsification, can subject an employee to immediate
termination.  Pl. CSF ¶ 6 (not contesting Def. CSF ¶ 6).

### i. Relevant Policies

The employee manual includes several policies regarding an employee's obligations:

First, the manual includes a "Breaks for Nursing Mothers" policy, which assures that employees expressing milk will have private space and be able to take additional breaks as needed.  Pl. CSF ¶ 7 (not contesting Def. CSF ¶ 7).  The Policy provides that such accommodations will be made so long as employees coordinate with their supervisors to ensure that any job tasks can be performed in the employee's absence.  See id.

Second, the manual includes an attendance policy, which requires employees to report to work on time and notify their supervisor if they will be late or absent.  Pl. CSF ¶ 8 (not contesting Def. CSF ¶ 8).

Third, the manual includes a timekeeping policy, which requires that employees "report to work adhering to the [dress code] and clock-in dressed in [uniform] at their designated clock location at their scheduled start time, then proceed to their work location."  Pl. CSF ¶ 9 (not contesting relevant portion of Def. CSF ¶ 9).  Employees are subject to discipline if they "(1) establish a pattern of clocking-in late, or arriving five or more minutes late; (2) clock-in but fail to immediately go to their workstation; (3) fail to clock-in/out; (4) fail to have their Cast ID; or (5) fail to immediately go to

their workstation and have a manager/lead witness their arrival time, when without their Cast ID."[1/]   Pl. CSF ¶ 10 (not contesting Def. CSF ¶ 10).   The timekeeping policy also provides that the loss of a Cast ID is "Poor Judgment."   Pl. CSF ¶ 37 (not contesting Def. ¶ 37).   As part of their timekeeping obligations, employees fill out daily forms noting any variance in their actual arrival or departure times.   Pl. CSF ¶ 11 (not contesting Def. CSF ¶ 11); see also Pl. CSF ¶¶ 12-13 (not contesting Def. CSF ¶¶ 12-13).

Finally, the manual provides other miscellaneous policies as well—relevant here, a dress code, prohibitions on unauthorized recordings, and a policy on "Cast Member Reservation Check-In."   Pl. CSF ¶ 14 (not contesting Def. CSF ¶ 14).

### ii. Documented Instances of Noncompliance

It is undisputed that Disney addressed several instances of Plaintiff's noncompliance with company policies. From 2012 through 2016, Plaintiff was coached, counseled, or reprimanded for the following:

- requirements for treatment of a resort guest;
- misadvising a guest on a resort policy;

---

[1/]   Disney calls its employee identification cards—which give employees building access and allow for clocking in and out—"Cast IDs."   The Court refers to them accordingly.

- noncompliance with the Disney dress code;

- repeat absences;

- being a "no-call/no-show" for a shift;

- clocking in at an unauthorized area;

- the need to ensure that guest reservations are in the guest's name;

- failure to note an early departure in timekeeping sheets; and

- forgetting to bring or misplacing a Cast ID.

Pl. CSF ¶¶ 17-23, 34 (not contesting Def. ¶¶ 17-23, 34); id. ¶ 35 (not contesting relevant portion of Def. CSF ¶ 35); see also Ex. 22 to Def. CSF (records of Plaintiff's history of counseling and reprimands).  This list is not necessarily exhaustive, and there are a handful of incidents of counseling or reprimands that are particularly notable to Plaintiff's legal claims:

First, Plaintiff received discussion counseling on November 5, 2016, for taking an undisclosed break the day before.  Pl. CSF ¶ 24 (not contesting relevant portion of Def. ¶ 24).  Plaintiff told her supervisor that she was going to Human Resources ("HR") to pick up a document and that she would "be right back."  Pl. CSF ¶ 25 (not contesting Def. ¶ 25). According to Plaintiff, when no one in HR was available, she went to the bathroom to express milk for her three-year-old son.

Pl. CSF ¶ 24; see also Pl. CSF ¶ 26 (not contesting Def. CSF ¶ 26).  After she received counseling for taking an unauthorized break, Plaintiff sent an email to HR on November 17, 2016, explaining that the reason she took the break was to express milk.  Ex. 23 to Def. CSF.

Second, Plaintiff was reprimanded for an incident that took place on November 12, 2016, involving her failure to comply with company policy while checking in a personal reservation for her son's birthday party.  Pl. CSF ¶ 33 (not contesting relevant portions of Def. CSF ¶ 33); Opp. at 8.

Third, on November 21, 2016, Plaintiff was counseled for allegedly recording the earlier November 5 discussion counseling session in violation of company policy.  Pl. CSF ¶¶ 24, 32 (not contesting relevant portions of Def. ¶¶ 24, 32).

Fourth, Plaintiff was coached about best practices on December 1, 2016, after she used her name to hold a guest's reservation.  Pl. CSF ¶ 34 (not contesting Def. CSF ¶ 34); Opp. at 8.

And fifth, Plaintiff received discussion counseling on December 28, 2016, for failing to note an early release as a schedule variance on her timesheet.  Pl. CSF ¶ 35 (not contesting relevant portions of Def. CSF ¶ 35);

**b. Plaintiff's Termination**

While most of the facts up to this point have been undisputed based on Plaintiff's admissions in her CSF, the parties dispute the circumstances that ultimately led to Plaintiff's termination.  Simply put, Disney contends that Plaintiff falsified her time records and this is why she was terminated, while Plaintiff insists she did not falsify the records.

On April 1, 2017, Plaintiff received discussion counseling after she lost her Cast ID and had to be manually clocked in and out two days earlier, on March 30.  Pl. CSF ¶ 36 (not contesting Def. ¶ 36).  After the counseling meeting, Disney contends that it learned from reviewing security footage that Plaintiff had "falsified" her timekeeping forms on the day she lost her Cast ID.  Def. CSF ¶ 38.  Disney says that she misrepresented to her supervisor the time she actually arrived at her workstation.  Def. CSF ¶ 40.

Disney and Plaintiff disagree on the timeline of events that morning.  Compare Def. CSF ¶¶ 39-42, with Pl. CSF ¶¶ 39-42.  It is undisputed, however, that (1) Plaintiff was scheduled to begin her shift at 8:00 a.m.; (2) Plaintiff forgot her Cast ID when she arrived at the resort (the exact time is disputed); (3) she followed another worker into the resort door at approximately 8:04 a.m.; and (4) she logged on to her

- 7 -

computer at 8:10 a.m.  Def CSF ¶ 39; Pl. CSF ¶ 39.  Plaintiff
maintains that she arrived at the resort before 8:00 a.m. but
had to wait for another employee to arrive to enter.  Pl. CSF ¶
39.  Disney, on the other hand, claims that security footage and
other records of employees arriving that morning establish that
Plaintiff arrived at the resort at 8:04 a.m., and that
regardless Plaintiff was not at her workstation in her uniform
ready to work, as required to be "clocked in."  See Def. CSF ¶
39.  All this to say, Plaintiff represented to her supervisor
and noted in her timekeeping form that she arrived at 8:00 a.m.,
but she admits that she was not in costume or at her designated
workstation at that time.  Pl. CSF ¶ 43 (not contesting Def. CSF
¶ 43).

        Plaintiff was ultimately suspended on April 11, 2017,
and terminated on May 2, 2017.  Pl. CSF ¶¶ 44-46 (not contesting
Def. CSF ¶¶ 44-46).

## II.  Procedural Background

        Plaintiff filed a charge of discrimination with the
Hawai`i Civil Rights Commission ("HCRC") on March 20, 2017, in
which she alleged discrimination for expressing milk based on
the November 2016 incident and retaliation for raising questions
about discrimination based on the subsequent counseling and
reprimands she received on other matters.  Ex. 26 to Def. CSF.
A few months later, she filed a second charge alleging that

- 8 -

Disney retaliated against her for filing the first HCRC charge. Ex. 27 to Def. CSF.  The HCRC ultimately dismissed Plaintiff's charges and issued right-to-sue letters.  See Ex. 28 to Def. CSF; Def. CSF ¶ 49.

On June 13, 2019, Plaintiff sued Disney in Hawai`i state court.  ECF No. 1-2.  She filed her first amended complaint on October 21, 2019, in which she asserted four causes of action:  count I for violation of state discrimination laws, count II for a hostile work environment, count III for intentional infliction of emotional distress ("IIED"), and count IV for retaliation.  ECF No. 1-3.  On October 24, 2019, Disney removed the action to federal court based on diversity jurisdiction.  ECF No. 1.  One year later, Disney filed the Motion for Summary Judgment on Counts I, II, and IV of Plaintiff's First Amended Complaint, ECF No. 36, and associated CSF, ECF No. 37.  While the Motion was pending and pursuant to the parties' agreement, Plaintiff filed the now-operative complaint, which removed count III (the IIED claim) altogether. ECF No. 44 (the "2AC").

Accordingly, now before the Court is Disney's Motion seeking summary judgment in its favor on the three claims asserted in the 2AC (now referenced as counts I, II, and III). Count I alleges that Plaintiff was discriminated against for needing to express milk in the workplace, in violation of Haw.

Rev. Stat. ("HRS") § 378-2(a)(7).   2AC ¶¶ 8-12.   Count II

alleges a hostile work environment.   2AC ¶¶ 13-14.   And Count

III alleges retaliation in violation of § 378-2(a)(2).   2AC ¶¶

15-17.   Plaintiff filed her Opposition, ECF No. 56, and CSF, ECF

No. 5, on March 2, 2021, and Disney filed its Reply, ECF No. 59,

and CSF in Reply, ECF No. 60, on March 23.[2/]   A telephonic

hearing was held on April 6, 2021.

## STANDARD

Summary judgment is proper where there is no genuine

issue of material fact and the moving party is entitled to

judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Rule 56(a)

mandates summary judgment "against a party who fails to make a

showing sufficient to establish the existence of an element

essential to the party's case, and on which that party will bear

the burden of proof at trial."   Celotex Corp. v. Catrett, 477

U.S. 317, 322, 106 S. Ct. 2548 (1986); see also Broussard v.

Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial

---

[2/]   Plaintiff later filed two erratas to her CSF.   The first—filed on March 22—added additional pages to an exhibit that were inadvertently left out of the original.   ECF No. 58.   The second—filed on March 31—added highlighted versions of the exhibits and a word-count certification.   ECF No. 62.   The second errata was a response to Disney's Reply Brief, in which it sought sanctions for Plaintiff's noncompliance with the Local Rules with respect to its CSF.   Reply at 15.   The Court DENIES Disney's request for sanctions at this time.   Plaintiff promptly filed an errata addressing most of the relevant problems by highlighting and excerpting the exhibits.

burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2548); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citation and internal quotation marks omitted and emphasis removed); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

        "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202).

When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

When a motion for summary judgment is not opposed, the moving party must still show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  See Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003); see also White v. Aramark, 670 F. App'x 578, 579 (9th Cir. 2016) (explaining that a "district court may grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine dispute of material fact" (citing Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993))).

## DISCUSSION

The Court must decide whether Disney is entitled to summary judgment in its favor as to the discrimination, hostile work environment, and retaliation claims brought under state law.  The Court addresses each of the three claims below and

ultimately concludes that Disney's Motion should be GRANTED in its entirety.

## I.   Discrimination Under HRS § 378-2(a)(7) – Count I

Count I of the 2AC alleges that Disney discriminated against Plaintiff in violation of HRS § 378-2(a)(7), 2AC ¶¶ 9-10, which makes it an unlawful discriminatory practice for an employer "to refuse to hire or employ, bar or discharge from employment, withhold pay from, demote, or penalize a lactating employee because the employee breastfeeds or expresses milk at the workplace," HRS 378-2(a)(7).  Looking to the 2AC, the allegations of discrimination appear to arise primarily from the November 2016 incident when Plaintiff was counseled for taking an unauthorized break away from her desk, during which time she says she was "in the bathroom expressing milk for her young child."  2AC ¶¶ 7(a)-(b); see also 2AC ¶¶ 7(f)-(g).  The 2AC notes other instances where she was counseled for unrelated compliance or best-practice issues as well, 2AC ¶¶ 7(h)-(k), (m), (o)-(p), and then alleges that she was terminated and discriminated against "due to expressing milk," 2AC ¶ 9.[3]

While the Hawai`i Supreme Court has not explicitly addressed this particular subsection of the Hawai`i code, it has

---

[3]  The Court notes that the 2AC cites § 378-2(a)(1) as well.  That subsection prohibits discrimination because of "race, sex including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, reproductive health (Continued . . . )

adopted the McDonnell Douglas framework to address other types

of discrimination claims under § 378-2.  Hac v. Univ. of Haw.,

102 Haw. 92, 101, 73 P.3d 46 (2003); see also Summer v. Am.

Savings Bank, F.S.B., Civ. No. 20-00374 JMS-WRP, 2020 WL

7212981, at *2 n.2 (D. Haw. Dec. 7, 2020) (implying that the

McDonnell Douglas framework would apply at the summary judgment

stage of a § 378-2(a)(7) claim).  Under the McDonnell Douglas

burden-shifting analysis, Plaintiff must first establish a prima

facie discrimination claim.  Cornwell v. Electra Cent. Credit

Union, 439 F.3d 1018, 1028 (9th Cir. 2006).  If Plaintiff makes

her prima facie case, the burden then shifts to Disney to

articulate "a legitimate, nondiscriminatory reason for its

conduct."  Id.; see also Hac, 102 Haw. at 102, 73 P.3d 46.  If

Disney gives such a reason, the burden would shift back to

Plaintiff to show "that the given reason is merely pretext for a

discriminatory motive."  Hollister v. Mrs. Gooch's Nat. Food

Markets, Inc., 919 F. Supp. 2d 1101, 1106 (D. Haw. 2013); see

also Hac, 102 Haw. at 102, 73 P.3d 46.

Plaintiff's Opposition lacks any meaningful discussion

of the discrimination claim, and her counsel conceded at the

hearing that there is insufficient evidence to support a claim

---

decision, or domestic or sexual violence victim status . . . ."  HRS § 378-
2(a)(1).  Because there are no allegations in the 2AC that Plaintiff was
discriminated against based on any of those characteristics, and because the
HCRC complaints and the 2AC focus solely on discrimination for expressing
milk, the Court assumes that Count I is limited to HRS § 378-2(a)(7).

for discrimination under HRS § 378-2(a)(7).  Disney's Motion is thus unopposed with respect to this claim.

The Court finds that Plaintiff has not met her burden of establishing a prima facie case of discrimination, and even if she had, there is no genuine dispute that Disney had a legitimate, nondiscriminatory basis for terminating Plaintiff, which is discussed <u>infra</u> with respect to the retaliation claim. Accordingly, because Plaintiff does not oppose summary judgment on this claim, and because the record shows no triable issues of fact, Disney's Motion for Summary Judgment is GRANTED as to count I of the 2AC.

## II.  Hostile Work Environment – Count II

Count II of the 2AC alleges that Disney's actions created a hostile work environment.  2AC ¶ 14.  The allegations in the 2AC are limited, but Plaintiff's later testimony indicates that she felt offended and bullied by the disciplinary and non-disciplinary actions taken by Disney, and that she perceived a "hostile threat" from her managers and supervisors. <u>See</u> Pl. ¶¶ CSF 54-56 (not contesting Def. CSF ¶¶ 54-56).

Plaintiff's hostile work environment claim is brought under state law.  As noted earlier, in interpreting HRS § 378-2, Hawai`i courts look to "the interpretations of analogous federal laws by the federal courts for guidance." <u>Arquero v. Hilton Haw. Village LLC</u>, 104 Haw. 423, 29-30, 91 P.3d 5050 (2004).

Thus, to prevail on a hostile work environment claim, a plaintiff must show "(1) that [s]he was subjected to verbal or physical conduct [on the basis of her protected class]; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the [her] employment and create an abusive work environment." Aoyagi v. Straub Clinic & Hosp., Inc., 140 F. Supp. 3d 1043, 1056 (D. Haw. 2015).

Plaintiff's Opposition does not address the hostile work environment claim at all, and her counsel likewise conceded at the hearing that there is insufficient evidence to show a hostile work environment. Disney's Motion is thus unopposed with respect to this claim as well.

The Court finds that Plaintiff has failed to raise any genuine issue of material fact as to her hostile work environment claim. There is simply no evidence that Plaintiff was subjected to any severe or pervasive conduct. So because Plaintiff does not oppose summary judgment on this claim, and because Disney has met its burden, Disney's Motion is GRANTED as to count II.

**III. Retaliation Claim – Count III**

Count III of the 2AC asserts a claim for retaliation in violation of § 378-2(a)(2). Plaintiff argues that she was disciplined and then terminated in retaliation for notifying her

supervisor of discrimination and for filing a charge with the HCRC, while Disney maintains that Plaintiff was reprimanded and then terminated based on evidence of wrongdoing and violations of company policies.  As discussed further below, the Court finds that Disney is entitled to summary judgment on the retaliation claim.

### a. Framework for Retaliation Claims Under § 378-2(a)(2)

HRS § 378-2(a)(2) makes it an unlawful discriminatory practice for an employer to "discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part."  The McDonnell Douglas burden-shifting framework described above applies to retaliation claims as well.  Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 426, 32 P.3d 52 (2001). Plaintiff must therefore first establish a prima facie retaliation claim.  Id.  If she makes her prima facie case, the burden then shifts to Disney to articulate "a legitimate, nondiscriminatory reason for the adverse employment action." Id.  If Disney does so, the burden would shift back to Plaintiff to show that the given reason is pretext for a discriminatory motive.  Id.

- 17 -

As discussed below, there is no genuine dispute of material fact.  While the Court finds that Plaintiff met her initial burden of establishing a prima facie case of retaliation, there is no genuine dispute that Disney had a legitimate, nondiscriminatory basis for terminating Plaintiff.  Disney is accordingly entitled to summary judgment on count III.

### b. Burden-Shifting Analysis

#### i. Prima Facie Case

A prima facie case of retaliation under HRS § 378-2(2) requires a showing that "(1) plaintiff engaged in a protected activity, (2) the employer subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action." Linville v. Hawai`i, 874 F. Supp. 1095, 1110 (D. Haw. 1994); see also Schefke, 96 Haw. at 426, 32 P.3d 52.  "At the summary judgment stage, the 'requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence.'" Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).  "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Wallis, 26 F.3d at 889 (quoting Tex. Dep't of

Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

## 1. Protected Activity

Plaintiff must first establish that she engaged in protected activity.  She appears to rely on three examples.  See Opp. at 7-8.  First, she points to a November 17, 2016 email to "manager Moli Mapu and Julie Leong of Human Resources referencing discrimination about expressing breast milk . . . ." Opp. at 7; see also ex. 23 to Def. CSF.  Second, Plaintiff references a second email—sent on November 21, 2016—which she characterizes as notifying HR "that Plaintiff had contacted HCRC about discrimination issues . . . ."  Opp. at 8; see also Ex. A to Pl. CSF.  And third, Plaintiff cites her HCRC charge, which she filed on March 20, 2017.  Opp. at 8.  Disney argues in response that the two emails are not complaints of discrimination, and that Plaintiff's Opposition misrepresents the contents to support her argument that they are protected activity.  Reply at 4-5.

Filing a complaint to the HCRC and making an informal complaint to a supervisor are both protected activities.  See Gonsalves v. Nissan Motor Corp. in Haw., 100 Haw. 149, 162, 58 P.3d 1196 (2002).  It is undisputed that Plaintiff filed a charge of discrimination with the HCRC on March 20, 2017, Ex. 26

to Def. CSF, so the HCRC charge plainly establishes that
Plaintiff engaged in protected activity.

The two emails are less straightforward. The Court
concludes that the first email is not protected activity. The
language in the email says nothing about discrimination or
complaining about on-the-job conduct or circumstances. See Ex.
23 to Def. CSF. It simply offers an explanation of Plaintiff's
whereabouts when she took the unauthorized break that led to
discussion counseling earlier that month, and states why she
previously felt uncomfortable sharing.

As for the second email, the Court finds that for
purposes of establishing her prima facie case, the November 21
email constitutes protected activity. In the email, Plaintiff
advised HR that she was seeking "attentive advice at the [HCRC]
as for my rights (Breastfeeding protection at worksite . . [.]
etc)." Ex. A to Pl. CSF. While she did not use the word
"discrimination," the email is plainly meant to inform her
workplace that she is considering her options with the HCRC as
to her right to express milk at work. For purposes of analyzing
the prima facie case, and given the minimal burden on Plaintiff
at this stage, the Court finds the November 21 email to be
protected activity.

Accordingly, Plaintiff has satisfied the first
element of her prima facie retaliation claim.

- 20 -

## 2. Adverse Employment Action

The second element of the prima facie case is a showing that Plaintiff suffered an adverse employment action. "An adverse employment action is one that causes a material employment disadvantage, such as a tangible change in duties, working conditions or pay." Delacruz v. Tripler Army Med., 507 F. Supp. 2d 1117, 1123 (D. Haw. 2007). Plaintiff appears to rely on a handful of examples of employment actions.

She primarily relies on her suspension and termination to meet this element. Both are plainly adverse employment actions, and Disney does not appear to dispute as much.

Next, Plaintiff points to three instances of non-disciplinary discussion counseling or coaching for noncompliance with company policies: (1) counseling for recording a counseling session earlier that same month, (2) coaching for using her name to hold a guest's reservation, and (3) counseling for failing to note an early release as a schedule variance on her timesheet. See Opp. at 8. Plaintiff has not explained how any of these instances of non-disciplinary counseling or coaching would constitute an adverse employment action. Plaintiff had regularly been counseled or coached on various matters throughout her time at Disney, and there is nothing irregular about these. Likewise, Plaintiff has not explained how these private counseling or coaching examples—which were done in

- 21 -

response to her failure to abide by certain company policies—led to any further employment consequences.  As a result, the Court finds that the non-disciplinary counseling and coaching sessions do not constitute adverse employment actions.

Finally, Plaintiff points to a reprimand she received in November 2016 for failing to comply with company policy while checking in a personal reservation for her son's birthday party. A letter of reprimand may sometimes constitute an adverse employment action, but courts must consider whether there was any employment consequence as a result of the reprimand letter.  See Thomas v. Spencer, 294 F. Supp. 3d 990, 999 (D. Haw. 2018) (collecting cases).  Courts also consider whether the reprimand could "dissuade a reasonable worker from making or supporting a charge of discrimination." You v. Longs Drugs Stores Calif., LLC, 937 F. Supp. 2d 1237, 1254 (D. Haw. 2013). Here, Plaintiff has not provided any evidence that she suffered any employment consequence as a result of the reprimand.  Nor has she explained how the reprimand would dissuade a reasonable worker from pursuing a discrimination charge.  That said, given that there are arguably factual disputes surrounding the circumstances of the written reprimand, the Court finds that the reprimand is enough for purposes of establishing a prima facie case.  In any event, Plaintiff's suspension and termination are enough to carry her burden on this element.

In sum, Plaintiff has established the second element of a prima facie retaliation claim, if not based on the written reprimand then certainly based on her suspension and termination.

### 3. Causal Link

The final element of the prima facie case is causation.  To establish causation Plaintiff must show "that engaging in the protected activity was one of the reasons for [her] firing and that but for such activity [she] would not have been fired." Ruggles v. Calif. Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir. 1986) (quoting Kauffman v. Sidereal Corp., 695 F.2d 343, 345 (9th Cir. 1982)).  The only basis Plaintiff cites for causation is temporal proximity.  See Opp. at 9.

"Temporal proximity alone generally has not been sufficient to establish causation unless the temporal proximity is very close." Bach v. Cmty. Ties of Am., Civ. No. 18-00103 LEK-WRP, 2019 WL 6054675, at *10 (D. Haw. Nov. 15, 2019) (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).  However, "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002).  Here, the relevant timeline is as follows:

- 23 -

- On November 21, 2016, Plaintiff sent the email to HR stating that she was in contact with the HCRC.

- On November 25, 2016, Plaintiff was issued the written reprimand for checking in a personal reservation for her son's birthday party.

- On March 20, 2017, Plaintiff filed her first charge of discrimination with the HCRC.

- On March 30, 2017, Plaintiff forgot her Cast ID and had to be manually clocked in.

- On April 11, 2017, Plaintiff was suspended for falsifying her time records in connection with the March 30 incident.

- On May 3, 2017, Plaintiff was terminated for falsifying her time records.

Although Disney provides explanations for why the reprimand, suspension, and termination all took place when they did (in response to specific instances of misconduct), the Court finds that the close temporal proximity here is enough to meet Plaintiff's minimal burden.  See Lyons, 307 F.3d at 1112 (explaining the "minimal" degree of proof for establishing a prima facie case on summary judgment); Wallis, 26 F.3d at 889 ("The amount [of evidence] that must be produced in order to create a prima facie case is very little." (citation and

internal quotation marks omitted) (alteration in Wallis)).  The
reprimand and suspension each took place within days or weeks of
the email complaint and HCRC charge.  Under any standard, the
employment action occurred soon after the protected activity.

For those reasons, the Court finds that Plaintiff has
carried her burden as to the causation element, and thus proven
her prima facie case for her retaliation claim.  The analysis
does not end there, however.  The Court must now decide whether
Disney had legitimate, non-discriminatory reasons for
terminating Plaintiff and, if so, whether those reasons were
pretext for retaliation.  The Court stresses that Plaintiff's
showing here on her prima facie case is the minimum necessary to
proceed under McDonnell Douglas.  And as discussed below, even
though she has made her prima facie case, Plaintiff still cannot
defeat summary judgment.

### ii. Disney's Legitimate, Nondiscriminatory Reasons

Now that Plaintiff has established her prima facie
case of retaliation and thus created a presumption of unlawful
discrimination, the burden shifts to Disney to show that its
adverse employment actions were taken for legitimate,
nondiscriminatory reasons.

Disney has presented admissible evidence that
Plaintiff was reprimanded for failing to comply with company
policies and terminated for falsifying her time records on March

30, 2017.  And it is undisputed that Disney's company policy provides that certain conduct, including any act of falsification, can result in immediate termination.  Pl. CSF ¶ 6 (not contesting Def. CSF ¶ 6).  Noncompliance with company policies and standards is sufficient justification for the adverse employment action.  See Wexler v. Jenson Pharm., Inc., 739 F. App'x 911, 913 (9th Cir. 2018) (affirming summary judgment for the employer where the plaintiff had performance issues that the employer articulated as a legitimate, nondiscriminatory reason for termination).

Accordingly, the burden then shifts back to Plaintiff to raise a triable issue of material fact as to whether Disney's proffered reasons for its actions are "mere pretext for unlawful discrimination."  Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010).

### iii. Pretext

Now that Disney has fulfilled its burden by offering a legitimate, nondiscriminatory reason for its employment actions, "the McDonnell Douglas presumption of unlawful discrimination 'simply drops out of the picture.'"  Wallis, 26 F.3d at 889 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).  With the burden back on Plaintiff, she must show that Disney's reasons for terminating her are pretextual.  She can satisfy that burden in one of two

- 26 -

ways: by either directly persuading the Court that a retaliatory reason more likely motivated the employer or indirectly showing that the employer's proffered explanation is unworthy of credence.  See Vasquez v. Cty. of L.A., 349 F.3d 634, 641 (9th Cir. 2003); see also Hollister, 919 F. Supp. 2d at 1106.

Plaintiff has no direct evidence that a retaliatory reason likely motivated Plaintiff's reprimand and ultimate termination.  Her Opposition makes two main arguments in an attempt to show that Disney's explanation is unworthy of credence.  She argues first that the "timing of key events" surrounding Disney's employment decisions "may give rise to an inference of pretext."  Opp. at 9.  Her second argument attacks the credibility of Disney's explanation by claiming that Plaintiff did not commit the misconduct that ultimately led to her termination.  See Opp. at 6, 8-10.

Temporal proximity alone is not usually enough to prove pretext.  See Bach, 2019 WL 6054675 at *10 (finding "woefully inadequate" the plaintiff's only argument for pretext, that there was "temporal proximity"), aff'd, 2021 WL 942786 (9th Cir. March 12, 2021); Mizraim v. NCL Am., Inc., Civ. No. 11-00077 JMS/KSC, 2012 WL 6569300, at *16-17 (D. Haw. Dec. 14, 2012) (collecting cases and observing that no "Ninth Circuit case [has] actually determin[ed] that proximity alone necessarily establishes pretext").  This is especially true

here, where the timing is explained by the undisputed fact that Plaintiff was disciplined following allegations of specific misconduct.

For instance, it is true that the November 25, 2016 written reprimand came a few days after Plaintiff emailed HR notifying them that she had been in contact with the HCRC. But the reprimand was also issued more than four months before Plaintiff was suspended or terminated, and it is undisputed that the reprimand was in response to conduct that took place on November 12, over one week before Plaintiff sent her email about contacting the HCRC. Disney submitted records of dated witness statements that informed the investigation, and Plaintiff has not disputed them. Ex. 34 to Def. CSF in Reply. Given those circumstances, Plaintiff cannot establish that temporal proximity between the email and the reprimand is enough to show pretext. The same goes for the proximity between the filing of the HCRC charge (March 20) and the suspension (April 11) and termination (May 2). The suspension and termination focused specifically on an event that occurred on March 30. None of the context suggests that Plaintiff's suspension on April 11 was the result of her filing of the HCRC charge two weeks earlier.

Simply put, just because Plaintiff can say that the timing in the abstract is proximate does not mean the Court can disregard all context when deciding whether an employment action

is pretextual. Indeed, in cases where temporal proximity is found to support a finding of pretext, that is hardly the only factor. See Mizraim, 2012 WL 6569300 at *16 ("[C]ases suggesting that proximity can establish pretext generally rely on additional facts to support the inference of retaliation."); see, e.g., Vasquez v. City of Idaho Falls, 778 F. App'x 415, 418 (9th Cir. 2019) (finding that evidence of temporal proximity, the defendant's treatment of the plaintiff during his employment, and "the irregular manner of [plaintiff's] discipline and termination," together raised a triable issue of fact as to pretext). Temporal proximity may have been enough to carry Plaintiff's minimal burden of establishing causation for her prima facie case, but it is not enough to create a triable issue of fact as to pretext. Cf. Wallis, 26 F.3d at 890 ("[I]n those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact.").

Plaintiff's only other argument for pretext appears to be that she did not actually falsify her time records. In other words, she challenges the veracity of the reasons Disney gave for her termination by disputing the truth of the underlying

misconduct allegations.[4/]  Because of this argument, the parties spend much of their briefs and oral arguments attempting to litigate the credibility of various witnesses and accounts of the timeline on March 30, 2017, when Plaintiff arrived at work without her Cast ID and had to be manually clocked in and out. But that misses the critical point.  In deciding whether Disney's proffered reasons were false, "it is not important whether they were <u>objectively</u> false (e.g., whether [Plaintiff] <u>actually</u> [falsified her time cards])." <u>Villiarimo</u>, 281 F.3d at 1063.  Instead, courts "only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." <u>Id.</u> (citing <u>Johnson v. Nordstrom, Inc.</u>, 260 F.3d 727, 733 (7th Cir. 2001)) (internal quotation marks omitted); <u>see, e.g.</u>, <u>Cohen-Breen v. Gray Television Grp., Inc.</u>, 661 F. Supp. 2d 1158 (D. Nev. 2009) (granting summary judgment to the employer even though the plaintiff disputed the truth of the employer's proffered reasons); <u>Groat v. City of Salem</u>, No. CIV. 03-6309-HO, 2006 WL 278157, at *2 (D. Or. Feb. 2, 2006) (granting summary judgment to the employer even though the plaintiff disputed the truth of the wrongdoing that led to his termination).  Here, Plaintiff

---

[4/]  The Court notes that Plaintiff indeed does not dispute that any act of falsification can be grounds for immediate termination.  <u>See</u> Pl. CSF ¶ 6 (not contesting Def. CSF ¶ 6).  Her argument is simply that she did not actually falsify her records.

has presented no evidence that Disney "did not honestly believe its proffered reasons." Villiarimo, 281 F.3d at 1063.

     To the contrary, much of the evidence in the record establishes that Disney conducted a quite thorough investigation, including looking at security footage, taking witness statements, and considering the feasible timeline based on the setup of the building.  Plaintiff offers only her own shifting testimony in response.  Cf. F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010) ("Specific testimony by a single declarant can create a triable issue of fact, but [the court] need not find a genuine issue of fact if, in its determination, the particular declaration was 'uncorroborated and self-serving.'" (quoting Villiarimo, 281 F.3d at 1061)).  And, in any event, she has not provided any evidence that Disney did not honestly believe that Plaintiff misrepresented her arrival time to her supervisor, which led to the false time entries.[5/]

_____

[5/]  For example, Plaintiff states in her Opposition and declaration that she arrived at the outside gate at 7:55 a.m., before she followed another employee inside under ten minutes later.  Opp. at 3-4; Pl. Decl. ¶¶ 27-29; see also Pl. CSF ¶¶ 40-42.  Yet, as Disney points out, she did not provide that detail in the course of her disciplinary meetings, her HCRC charge, or even later in discovery for this case.  Plaintiff had every opportunity to provide her own explanation to Disney during the suspension and then termination process.  But there is no evidence that Disney had any reason to think its understanding of the timeline was wrong, especially given its detailed investigation into the matter.  Nor is there any evidence that the timeline would make any difference here, where it is undisputed that Plaintiff was not dressed in uniform and ready to work at her workstation at the time indicated on her timesheet, and where the timing on the timesheet and clock-in system was based on Plaintiff's representation to her supervisor (that she began working at 8:00 a.m.).  See Pl. CSF ¶ 43 (not contesting Def. CSF ¶ 43).  Based on the record, it is undisputed that Plaintiff would have (Continued . . . )

It is worth noting again that it is Plaintiff's burden
to show pretext, and she cannot defeat summary judgment by
relying solely on the scant evidence she used to establish her
prima facie case.  See Wallis, 26 F.3d at 889-90 ("[T]he mere
existence of a prima facie case, based on the minimum evidence
necessary to raise a McDonnell Douglas presumption, does not
preclude summary judgment.").  Instead, "in deciding whether an
issue of fact has been created about the credibility of the
employer's nondiscriminatory reasons, the district court must
look at the evidence supporting the prima facie case, as well as
the other evidence offered by the plaintiff to rebut the
employer's offered reasons."  Id. at 890 (emphasis added).
Plaintiff here has failed to produce "specific, substantial
evidence of pretext."  Wallis, 26 F.3d at 890 (quoting Steckl v.
Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983)).  Without
more, the evidence is not "sufficient to permit a rational trier
of fact to find [Disney's] explanation to be pretextual."  Id.

---

understood the Disney timekeeping policy, which requires that employees
"report to work adhering to the [dress code] and clock-in dressed in
[uniform] at their designated clock location at their scheduled start time,
then proceed to their work location."  Pl. CSF ¶ 9 (not contesting relevant
portion of Def. CSF ¶ 9).  Even under Plaintiff's timeline, she was not in
dress code and at her designated clock-in location at her start time of 8:00
a.m. (or within the five-minute grace period), despite noting as much on her
time sheet and providing information that caused her supervisor to do so.
    Again, the Court declines to litigate the specific circumstances of the
March 30 incident.  Any disputes about whether Plaintiff actually or
intentionally falsified her time sheets are immaterial.  The Court need only
consider whether the decisionmakers at Disney believed its proffered reasons
for terminating Plaintiff.  Plaintiff has not raised any probative or
specific evidence as to any material fact.

(collecting cases and noting that "the mere fact that a bare <u>prima facie</u> case had been made out was not in itself sufficient [to create a genuine issue of material fact]").

All this to say, Plaintiff has not met her burden of showing that Disney's legitimate, nondiscriminatory reasons for disciplining and terminating her were cover for retaliation.  A reasonable jury could not conclude, based on all the evidence, that Plaintiff's email or later filing of the HCRC charge was a motivating or determining factor for the decision to reprimand, suspend, and then discharge Plaintiff.  For those reasons, there is no genuine issue of triable fact, and Disney is entitled to summary judgment on count III of the 2AC.

<u>**CONCLUSION**</u>

For the foregoing reasons, Disney's Motion for Summary Judgment is GRANTED.

There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, April 27, 2021.



_____
Alan C. Kay
Sr. United States District Judge

Kim v. Disney Vacation Club Hawaii Management Co., LLC, Civ. No. 19-00579
ACK-WRP, Order Granting Defendant Disney's Motion for Summary Judgment (ECF
No. 36).